UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
Jamell O'Neal, Register # 12801-067;
Angelo Brown, Register # 83143-053;
Steven Brown, Register # 16492-067;
Naysean Chavis, Register # 79624-054;
Rudy Garcia, Register # 91266-053,

                              Plaintiffs,           **FIRST AMENDED COMPLAINT**

       -against-

United States of America and Warden Herman Quay,
in his official capacity,

                              Defendants.
-------------------------------------------------------------------X

Plaintiffs, complaining of the defendants, by and through their attorneys, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf, & Carone, LLP, respectfully show to this Court and allege that they were deprived their civil rights and sustained injury as a result of the deprivations of their civil rights and as a result of the Unites States' negligence.

## PRELIMINARY STATEMENT

1. From January 27, 2019 to early February of 2019, and then again in early March of 2019, there was a power outage, initially caused by a fire, at the federal detention facility in Brooklyn, New York, known as the Metropolitan Detention Center ("MDC" or "the facility").

2. The power outage caused a loss of power at the facility's West Building where plaintiffs, all pretrial detainees at the time, were housed.

3. As a result of the power loss, there were no lights. This resulted in plaintiffs being locked in their cells all day and all night with the exception of a minimum break to take a cold shower, if they chose to subject themselves to this.

4. The temperature in the West Building dropped to near freezing temperatures and the ventilation system was continuously blowing cold air into the cells where plaintiffs were locked in for most of the day.

5. Defendant Quay ignored and/or was deliberately indifferent to the conditions in the facility; the United States was negligent in allowing these conditions to exist when it was foreseeable that plaintiffs would suffer as they did.

6. Plaintiffs were subjected to inhumane conditions of confinement caused by the extreme temperatures, the ventilation that continuously blew close to freezing temperature cold air, the failure to provide extra blankets and/or clothing when even the MDC staff were wearing winter parkas and hats indoors, the lack of warmth, lack of toilet paper, lack of toiletries and other hygienic items, lack of showers, lack of medication, lack of food, lack of nutrition and, inter alia, fear of crime and intimidation due to the lack of facility staff, video surveillance and lighting in the facility.

7. Plaintiffs bring this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 28 U.S.C. § 2674, *Bivens v Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, for violations of their civil rights and for the negligent and wrongful acts of the individual defendants herein, as said rights are secured by said statutes and the Constitution of the United States.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over claims arising under the Fifth Amendment of the United States Constitution as well as jurisdiction over federal tort claims brought against the United States of America.

9. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the defendants' facility is located and in which the circumstances giving rise to plaintiffs' claims arose.

## JURY DEMAND

10. Pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b), plaintiffs request a jury trial on all issues and claims set forth in this amended complaint.

## PARTIES

11. Plaintiffs, at all times relevant to the claims brought herein, were federal pretrial detainees in the custody of the United States of America ("USA") confined at MDC, located at 80 29th Street, Brooklyn, New York, in Kings County, and within the Eastern District of New York.

12. At all times material hereto, defendant United States of America owned and operated the correctional facility known as MDC, in Kings County in the State of New York, and is the appropriate defendant under the Federal Torts Claims Act (FTCA).

13. Defendant Herman Quay is an employee of the United States of America and the Warden of the MDC Facility in Brooklyn; he has supervisory authority at MDC, he is employed by the Federal Bureau of Prisons of the United States Department of Justice ("BOP"), and he acted within the course and scope of his employment and under color of law at all times relevant to this amended complaint.

[Intentionally Left Blank]

## BACKGROUND

**A.  The MDC**

14. The MDC is the principal federal pretrial detention facility in this District. It is operated by Defendant United States' agent, BOP, and led by Defendant Herman Quay, the warden of the facility.

15. The majority of the detainees held at the facility are pretrial detainees and thus are presumed innocent of the crimes for which they may ultimately be tried.

16. The plaintiffs herein were pretrial detainees at all times relevant to their claims.

17. The facility relies heavily on electricity for heat, ventilation, warm water, electronic mail for contact with attorneys and family, to submit medical requests, prescription refills, and administrative grievances, and for its video surveillance and security cameras.

**B.     The Fire at the MDC**

18. On January 27, 2019, a power source in the switch gear room in the West Building of the MDC caught fire, leading to partial and wide-ranging power outages.

19. Following the fire, MDC inmates reported to their attorneys that there was little or no heating, no hot water, no electricity, no access to medical services, telephones, televisions, computers, laundry, or commissary. Inmates also reported that they smelled noxious fumes. Some inmates reported seeing BOP officers wearing masks. No inmates received masks.

**C.     The Conditions at MDC Which Existed from January 27, 2019 to February 4, 2019 and Which Re-Occurred Again in Early March of 2019**

20. All plaintiffs reported seeing BOP officers in winter clothing, hats, scarves, and heavy jackets.

21. None of the plaintiffs had a jacket nor anything to cover themselves with except for a thin blanket.

22. Plaintiffs were locked in their cells all day and night except for the limited time period when they were permitted to use the showers, if they chose to leave their cells, they showered in cold water.

23. While locked in their cells for most of the hours of the day, plaintiffs were subjected to close to freezing temperature air that was continuously blowing from the vents.

24. The lights were not functioning, leaving the plaintiffs in total darkness all day long.

25. When plaintiffs did contemplate taking a freezing cold shower to rid themselves of the filth they were subjected to as a result of no toilet paper, they quickly changed their minds for fear of crime as a result of the total darkness, the lack of security (insufficient number of guards), and the lack of functioning security cameras.

26. Plaintiffs were not fed between 10:00 a.m. and 6:00 p.m. and they did not receive any hot meals.

27. Plaintiffs did not have jackets; some plaintiffs had a thin sweater, but others were left only with a t-shirt to endure the close to freezing cold temperatures.

28. Plaintiffs were unable to fulfill their medical prescriptions.

29. Plaintiffs were unable to request medical care.

30. Plaintiffs were unable to consult with counsel or the outside world.

31. The conditions were clearly obvious to anyone in the facility and eventually were made known to the public who began protesting outside the facility to bring awareness to the inhumane treatment.

32. Plaintiffs were regularly denied their basic needs during the relevant time frame and were exposed to conditions that posed an unreasonable risk of serious damage to their future health.

33. The conditions – singularly, lack of warmth, lack of clothing, lack of food, poor ventilation, lack of toilet paper, lack of medical care, lack of warm showers, lack of contact with attorneys and family, lack of security - each constitute objective deprivations of the right to due process.

34. These deprivations were not the result of some large-scale policy decisions concerning the conditions of confinement but rather were the result of defendant Warden Quay's failure to oversee and/or conduct standard prison maintenance operations and/or his failure to prevent, stop, rectify, and/or resolve the resulting inhumane conditions of confinement.

35. Claims such as those brought here, involving Fifth Amendment Due Process Clause violations of federal pretrial detainees' rights, based upon the deliberate indifference to the plaintiffs' medical needs, in addition to other basic human needs, does not call upon this Court to extend a *Bivens* remedy into a new context.

## CONDITION PRECEDENT

36. All the plaintiffs presented their claims to the United States Department of Justice's Federal Bureau of Prisons pursuant to 28 U.S.C.A. § 2675 and all of the plaintiffs' claims were finally denied by the agency in writing.

## DAMAGES

37. Defendant Quay's deliberate indifference to plaintiffs' conditions of confinement caused plaintiffs to be punished without due process.

38. The conditions that the plaintiffs were caused to endure and suffered individually as well as combined, posed an unreasonable risk of serious damage to plaintiffs' health which include the risk of serious damage to physical and mental soundness.

39. Defendant United States' negligence and Defendant Quay's deliberate indifference and misconduct caused plaintiffs to suffer high blood pressure, headaches, extreme cold, deprivation of sleep, deprivation of warmth, exhaustion, mental anguish, psychological injuries, fear, and emotional distress.

40. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, and/or bad-faith acts and omissions of the defendants caused plaintiffs to be damaged.

41. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, and/or bad-faith acts and omissions of the defendants caused plaintiffs the following injuries and damages, which were foreseeable to the defendants at the time of their acts and omissions and/or which posed an unreasonable risk of serious damage to plaintiffs' health: risk of serious damage to plaintiffs' physical and mental soundness, inhumane conditions of confinement, high blood pressure, headaches, extreme cold, deprivation of sleep, deprivation of warmth, exhaustion, mental anguish, psychological injuries, and emotional distress, for which they are entitled to monetary relief.

42. All the alleged acts, misdeeds and omissions committed by defendant Quay described herein for which liability is claimed were done intentionally, willfully, purposefully, knowingly, unlawfully, maliciously, wantonly, recklessly, and/or with bad faith and/or deliberate indifference, and said proscribed conduct of the individual defendant meets all of the standards for imposition of punitive damages.

43. Damages are in the amount to be determined at trial but are in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars exclusive of interest and costs.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Fifth Amendment Due Process Violation under <u>Bivens</u> and 42 U.S.C. §1983)

44. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

45. The treatment and conditions that plaintiffs were subjected to constituted punishment without due process in violation of the Fifth Amendment.

46. Defendant Quay's deliberate indifference to plaintiffs' conditions of confinement caused plaintiffs to be punished without due process.

47. There was no legitimate purpose for the inhumane conditions of confinement that plaintiffs were subjected to by defendant.

48. Defendant was personally aware of the inhumane conditions that the plaintiffs, who were pretrial detainees in the facility he oversaw, were subjected to, suffered from, and were caused to endure for a minimum of nine (9) days and then again in March of 2019.

49. The conditions were so obviously known to defendant as his own staff was working in winter parkas, hats and gloves in an attempt to endure the extreme temperatures.

50. Defendant was charged with overseeing, running, and controlling the facility and thus the inhumane conditions that the plaintiffs were subjected to, suffered from, and were caused to regularly endure, were his responsibility and were so blatantly obvious.

51. Defendant was personally responsible for the continued inhumane conditions that the plaintiffs were subjected to, suffered from, and were caused to endure.

52. Defendant failed to take any action to prevent and/or stop the inhumane conditions that plaintiffs were subjected to, suffered from, and were caused to endure.

53. Defendant had no legitimate purpose for leaving the plaintiffs to suffer in constant near freezing temperatures.

8

54. Defendant had no legitimate purpose for leaving the plaintiffs to suffer without heat, food, toilet paper, heated showers, safety, lighting, adequate supervision, security cameras, medication, hygienic items, toiletries, and counsel visits.

55. Defendant recklessly failed to act with reasonable care to mitigate the risk that the conditions posed to the pretrial detainee plaintiffs even though he knew or should have known that the conditions posed an excessive risk to health and/or safety.

56. The conditions of confinement considered together or separately amounted to an objective constitutional deprivation of the right to due process.

57. As a result of the defendant's actions, the plaintiffs suffered inhumane treatment that constituted punishment without due process.

58. That by reason of the aforesaid, the plaintiffs have been damaged in a sum to be determined by a jury.

## AS AND FOR A SECOND CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

59. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

60. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

61. The aforementioned conduct was committed by defendants while acting within the scope of their employment for defendant United States of America.

62. The aforementioned conduct was intentional and caused severe emotional distress, embarrassment, humiliation, shock and fright to the plaintiffs.

63. That by reason of the foregoing, the plaintiffs have suffered damages in an amount to be determined upon the trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)

64. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

65. That solely by reason of the aforesaid and of the negligence of the defendants, their agents, servants, and/or employees, plaintiffs suffered extreme emotional, psychological and mental distress, and anxiety.

66. That by reasons of the foregoing, the plaintiffs have suffered damages in an amount to be determined upon the trial of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Liability of the USA)

67. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

68. Defendant United States of America owed a duty of care to plaintiffs who were detainees in its facility.

69. Defendant United States of America breached its duty of care to plaintiffs in negligently operating and/or managing MDC.

70. Defendant United States of America breached its duty of care to plaintiffs in failing to properly recruit, screen, and hire, its agents, servants, and its employee defendant Quay.

71. The USA had a duty to competently and sufficiently recruit, screen, and hire its employees and agents to ensure that they did not have incompetent and depraved propensities.

72. Defendant United States of America breached its duty of care to plaintiffs in failing to properly oversee, supervise, train, and discipline its agents, servants, and its employee defendant Quay.

73. The USA had a duty to competently and sufficiently oversee, supervise, train, and discipline its employees and agents to ensure that they did not have incompetent propensities.

74. The USA was also negligent in failing to afford the individual defendant the proper and necessary training and supervision for ensuring that pretrial detainees are not subjected to inhumane conditions of confinement. Instead, the USA condoned the treatment of the pretrial detainees such as plaintiffs which would not have occurred had proper and necessary training, supervision and oversight occurred.

75. Under the Federal Tort Claim Act, the USA is vicariously liable for the negligent and wrongful acts or omissions of its employees and agents as set forth above and as otherwise provided by statute, which were not discretionary or clerical.

76. The USA is responsible for the above-referenced negligence of the individually named defendant who permitted pretrial detainees to be subjected to the inhumane conditions of confinement described above.

77. As a result of the negligence of defendant United States of America, its agents, servants and employees, plaintiffs have suffered injuries and damages as set forth herein.

78. The negligent and wrongful acts and/or omissions of the defendants were the proximate cause of the plaintiffs' injuries and damages.

79. The injuries and damages suffered by plaintiffs were a foreseeable result of the defendants' negligent and wrongful acts and/or omissions.

80. That defendant United States of America is liable for the acts of the individually

named defendant under the doctrine of *respondeat superior*.

81. By reason of foregoing, plaintiffs demand compensatory and punitive damages.

82. That by reason of the foregoing, the plaintiffs have suffered damages in an amount to be determined upon the trial of this action.

**WHEREFORE**, plaintiffs respectfully request that this Court:

A. Assume jurisdiction over this matter;

B. Award compensatory damages to plaintiffs;

C. Award punitive damages to plaintiffs;

D. Convene and impanel a jury to consider the merits of this claim;

E. Award plaintiffs reasonable costs and interest; and

F. For any and all other relief to which they may be entitled.


Dated: Lake Success, New York
February 19, 2020

_____
Amy Marion
Abrams, Fensterman, Fensterman, Eisman,
Formato, Ferrara, Wolf, & Carone, LLP,
3 Dakota Drive, Suite 300
Lake Success, New York 11042
(516) 328-2300